UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| ALISON SHADER,<br><br>    **Plaintiff,**<br><br>V.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>    **Defendant.** | CIVIL ACTION NO. 3:14-29-KKC<br><br><u>**OPINION AND ORDER**</u> |

      This matter is before the Court on Plaintiff's motion for judgment on the pleadings (DE 14) and Defendant's motion for summary judgment (DE 15). Plaintiff Alison Shader brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

**I. OVERVIEW OF THE PROCESS**

      The Social Security Act and corresponding regulations provide a five-step sequential process for determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the administrative law judge ("ALJ") concludes that the claimant is or is not disabled, then the ALJ can complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof through the first four steps of the analysis; and, at step five, the burden shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). The claimant must, in order to satisfy her burden of proof, provide sufficient facts to find in her favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010). It is also the claimant's responsibility to supplement the record to resolve any factual ambiguity. *Id.*

## II. PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Shader first applied for disability and disability insurance benefits on March 8, 2010. (Tr. at 101.) Her claim was denied initially and upon reconsideration, and an ALJ issued an unfavorable decision on June 20, 2011. (Tr. 98–109.) Shader did not appeal that decision. (Tr. at 33.)

Then Shader filed her current claim for SSI—alleging an onset date of June 27, 2011. (Tr. at 195.) The agency again denied her application initially and on reconsideration. (Tr. 96, 126.) Shader requested review by an ALJ, and a different ALJ held a hearing on

2

September 26, 2013. (Tr. at 30–61.) The ALJ subsequently issued an unfavorable decision on October 11, 2013. (Tr. at 13–26.)

At the time the ALJ rendered his decision, Shader was forty-eight years old. She has completed high school but has no additional educational or vocational training. (Tr. at 25, 48.) Shader previously worked as an assembler at a factory that manufactured car parts. (Tr. at 25, 34–35, 54–55.) She alleges disability due to back problems, degenerative "neck do," degenerative disc disease, depression, nerve problems, and torticollis. (Tr. at 114.)

At the first step, the ALJ determined that Shader has not engaged in substantial gainful activity since her application date. (Tr. at 18.) At the second step, the ALJ found that Shader suffers from the following severe impairments: "torticollis (twisting of the neck); degenerative disc disease of the cervical spine; myelopathy; asthma; chronic obstructive pulmonary disease (COPD); depressive disorder; and anxiety disorder." (Tr. at 18.) At the third step, the ALJ concluded that Shader does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. at 18–20.)

Next, the ALJ reviewed the record to determine Shader's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In finding Shader's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations

and restrictions due to symptoms. 20 C.F.R. § 416.929; SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996). The ALJ also considered the relationship between Shader and the doctors providing medical opinions; the supportability and consistency of the medical opinions with the entire record evidence; medical specialization; and other opinion evidence. 20 C.F.R. § 416.927; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL 374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

After reviewing all the record evidence, the ALJ determined that Shader has the RFC to perform light work—work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also noted that Shader should adhere to the following limitations:

> She is limited to occasional overhead reaching with the bilateral upper extremities. She cannot perform overhead lifting. . . . She cannot turn her lead to the left, but she has no limitation on turning her head to the right. She can extend her head up 45 degrees and down 45 degrees. The claimant cannot perform work-related driving. She is limited to simple, repetitive tasks. She shall not be required to execute decision-making functions. She requires a non-public work environment. She requires a low-stress work environment with no fast-paced production goals such as an assembly line or piecework rate.

(Tr. at 20.)

The ALJ continued to the fourth step. The ALJ asked the vocational expert ("VE") whether a hypothetical individual with Shader's education, experience, and RFC could perform Shader's past relevant work in factory assembly. (Tr. at 57–58.) The VE testified that this hypothetical individual could not perform Shader's past work. (Tr. at 58.) The ALJ moved to the fifth step and asked if this hypothetical individual could perform other jobs

available in the regional or national economy, and the VE stated that this hypothetical individual could perform the following jobs: office helper, mail sorter, and produce sorter. (Tr. at 26, 58–59.) Therefore, the ALJ found Shader not disabled. (Tr. at 26.)

The ALJ's decision that Shader was not disabled from June 27, 2011 through October 11, 2013 became the final decision of the Commissioner when the Appeals Commission subsequently denied Shader's request for review on January 30, 2014. (Tr. at 4–6.) Shader has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

### III. GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing the decision of the Commissioner, courts should not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the record as a whole, and "[t]he court 'may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence.'" *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (alteration in original) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). Rather, courts must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court may have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**IV. ANALYSIS**

Shader presents four issues for review. First, she argues that the ALJ failed to fulfill his duty to develop the record. Second, Shader asserts that the ALJ's RFC determination is not supported by substantial evidence. Third, she contends that the ALJ failed to properly analyze her credibility. And fourth, Shader claims that the ALJ's determination that she could make an adjustment to other work is not supported by substantial evidence.

*1. The ALJ did not err in developing the record.*

The claimant bears the burden of establishing her disability. 20 C.F.R. § 404.1512. The claimant meets her burden by "furnish[ing] medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s) and . . . its effect on [the claimant's] ability to work on a sustained basis." *Id.* § 404.1512(a).

The ALJ bears the burden of "ensur[ing] that a full and fair administrative record is developed." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986). The ALJ bears a "special, heightened duty to develop the record" only under "special circumstances." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008). Special circumstances exist "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures." *Id.* (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983)).

Here, the ALJ met his burden and none of the "special circumstances" apply to this administrative proceeding. First, Attorney Kyle Reeder represented Shader before the ALJ. (Tr. at 32.) In fact, Reeder had assisted with Shader's disability application since 2011. (*See* Tr. at 36–37, 43.) Second, Shader could present an effective case. *Compare Lashley*, 708 F.2d at 1049 (noting that the claimant was a seventy-nine-year-old with a fifth grade education; had suffered two strokes; and had trouble reading, writing, and reasoning), *with*

6

(Tr. at 19, 23–24, 45–48.) (describing Shader as a high school graduate who can perform all the activities of daily living, although at a slower pace). Third, Shader is not unfamiliar with hearing procedures. She previously filed a claim for disability insurance benefits and testified before an ALJ. (Tr. at 62–81, 98–109.)

Accordingly, the ALJ did not have a "special, heightened duty to develop the record." The ALJ correctly relied on the evidence that Shader furnished, and the ALJ's conclusions are supported by substantial evidence and applied the correct legal standards. *See Lindsley*, 560 F.3d at 604.

2. *The ALJ's RFC is supported by substantial evidence.*

RFC is an administrative finding of an individual's ability to perform work-related activities, and establishing the claimant's RFC is a decision reserved for the Commissioner. *See* 20 C.F.R. § 404.1545(a); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). The Commissioner's assessment is based upon all of the relevant medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(3). Medical opinion evidence may include reports from treating physicians, examining physicians, and nonexamining physicians; and the ALJ must discuss the weight afforded to the treating physician's opinion and the rationale supporting the ALJ's determination. *Id.* § 404.1527(c). The ALJ evaluates other medical opinions based upon the amount of medical source evidence supporting the opinion, the consistency of the opinion with the record as a whole, whether the opinion is from a specialist discussing an issue related to his or her area of specialty, and other factors that tend to support or contradict the opinion. *Id.*; *see also Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012) (determining that the ALJ's reasoning for crediting or discrediting medical opinions does not need to be verbose).

After assessing the record evidence, the ALJ evaluates a claimant's functional limitations to her work-related abilities on a "function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Although the ALJ must perform a function-by-function evaluation to determine a claimant's RFC, "'SSR 96-8p does not require ALJs to produce such a detailed statement in writing.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)). Rather, SSR 96-8p only requires that an ALJ specify the claimant's exertional and nonexertional abilities. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

Shader asserts that the ALJ failed to afford sufficient weight to her treating physician's opinion and that the ALJ did not evaluate her work-related abilities on a function-by-function basis. (DE 14-1, Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings, at 9–13.) But both arguments lack merit.

Dr. Honaker was Shader's treating physician. The ALJ specifically discussed Dr. Honaker's office notes and the amount of weight afforded to Dr. Honaker's opinion. (Tr. at 21–25.) The ALJ found that "Dr. Honaker's notes do not list objective findings," that Dr. Honaker's notes lack "formal recitation of clinical findings," and that Dr. Honaker's statement that Shader is "completely and permanently disabled" is not consistent with the record as a whole. (Tr. at 23, 25.) Consequently, the ALJ afforded Dr. Honaker's medical opinion "no weight," concluding that it was inconsistent with the record and lacked clinical support. (Tr. at 24–25); *see also* 20 C.F.R. § 404.1527(c).

The ALJ's analysis of Dr. Honaker's medical opinion evidence is supported by substantial evidence and applied the proper legal standards. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The ALJ compared Dr. Honaker's findings with all the evidence in the

8

case record and explicitly determined that the opinion deserved "no weight." *Id.* (noting that an ALJ must always indicate how much weight he gives to a treating source opinion). The ALJ's reasons are supported by evidence in the case record, and the ALJ's decision is sufficiently specific to safeguard Shader's procedural rights. *Id.* Therefore, the ALJ did not err in evaluating the medical opinion evidence of Shader's treating physician.

The ALJ also properly evaluated Shader's work-related abilities on a function-by-function basis. The ALJ discussed all of the medical opinions in the record. (Tr. at 22–24.) He noted which medical opinions assessed Shader's physical limitations and which medical opinions concerned Shader's mental impairments. (Tr. at 22–23.) The ALJ then used all the medical record evidence to specify how Shader's physical and mental restrictions affected her exertional and nonexertional limitations. (*See* Tr. at 20–25.) Because the ALJ considered all the medical record evidence and articulated Shader's exertional and nonexertional limitations, the ALJ properly evaluated Shader's work-related abilities on a function-by-function basis. *Rudd*, 531 F. App'x at 724, 729.

Accordingly, the ALJ's RFC is supported by substantial evidence and applied the correct legal standards. *Id.*; *Cole*, 661 F.3d at 937.

3. *The ALJ properly analyzed Shader's credibility.*

In evaluating a claimant's statements concerning the intensity, persistence and limiting effects of her symptoms, the ALJ may properly consider the claimant's credibility. *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013). The ALJ's credibility assessment is afforded great weight and deference because the ALJ observes the claimant and witnesses the claimant's responses to questions throughout the administrative hearing. *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ's credibility assessment, however, must also be supported by substantial evidence. *Temples*, 515 F. App'x at 462. The ALJ's credibility determination must be based upon record evidence and not intangible or intuitive notions of credibility. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). The ALJ should compare the claimant's statements and actions with medical signs and laboratory findings, medical source opinions, reports of daily activities, response to prior treatments, and any other pertinent information. SSR 96-7p, at *5. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers*, 486 F.3d at 248. Overall, the ALJ's credibility determination is a holistic evaluation of the evidence. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542–43 (6th Cir. 2007); *Rogers*, 486 F.3d at 247–48; SSR 96-7p, at *3–4.

Here, the ALJ's determination that Shader was not credible is supported by substantial evidence. He found that Shader's claims were not supported by objective medical findings, that she is "not under current active treatment," that Shader only takes over-the-counter medication and does not take any prescription medication, that her claims are inconsistent with her daily activities, that a psychological examiner observed that Shader gave poor effort during an examination, and that she could not identify any significant deterioration in her condition "since the prior unfavorable decision of June 2011." (Tr. at 24, 36–38, 40, 227–28, 342.)

Shader claims that the ALJ should have considered how much longer it takes her to complete her daily activities, her use of a neck brace, her treatment in physical therapy, and her Botox treatment to support the credibility of Shader's statements. (DE 14-1, Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings, at 13–14.) Shader does not, however, contest

10

any of the ALJ's findings that undermine her credibility. Therefore, even if there is some evidence that may support Shader's description of her symptoms, the ALJ did not err in relying on the substantial evidence supporting his credibility determination. *See Cruse*, 502 F.3d at 543; *see also Sias*, 861 F.2d at 479 n.1 (holding that a court should evaluate the evidence as a whole and not focus on singular contradictory pieces of evidence).

> 4. *The ALJ did not err in determining that Shader could make an adjustment to other work.*

At the fifth step in the five-step sequential disability evaluation process, the ALJ must consider the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). The Commissioner bears the burden of proving that the claimant can make an adjustment to other work and to identify a significant number of jobs in the economy that can accommodate the claimant's vocational profile. *Cruse*, 502 F.3d at 545.

Frequently, the Commissioner meets this burden through the testimony of a vocational expert ("VE"). SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). A VE will testify to the occupational opportunities available to a person with the claimant's vocational profile. *Id.*, at *2. The ALJ then relies on the occupational evidence provided by the VE and takes administrative notice of "reliable job information" available from the Dictionary of Occupational Titles ("DOT"). *Id.*, at *1–2.

The ALJ has an affirmative duty to ask the VE if her testimony "conflicts with information provided in the DOT." *Id.*, at *4. But it is also the claimant's responsibility to test the veracity of the VE's testimony through cross examination. *Lindsley*, 560 F.3d at 606; *see also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). And even if

11

the occupational evidence in the DOT and the VE's testimony conflict, "[n]either the DOT nor the VE['s testimony] automatically 'trumps' when there is a conflict." SSR 00-4p, at *2. If there is a conflict, the ALJ must consider that the DOT merely contains general information about most occupations and not the full range of requirements for all jobs in the economy. *Id.*, at *2–3.

Further, the ALJ is not bound by the DOT's characterization of any occupation. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). In fact, the Sixth Circuit has repeatedly held that "the ALJ and consulting [VEs] are not bound by the [DOT] in making disability determinations because the Social Security regulations do not obligate them to rely on the [DOT's] classifications." *Id.*

Shader asserts that the ALJ erred in failing to reconcile the VE's testimony with Shader's RFC. Specifically, she claims that the DOT classification for office helper, mail sorter, and produce sorter conflict with her RFC. (DE 14-1, Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings, at 14–15.) This argument is unavailing.

First, the ALJ fulfilled his duty to ask whether the VE's testimony conflicted with the DOT. (Tr. at 60.) Second, Shader failed to cross examine the VE to test the veracity of the VE's testimony. (*See* Tr. at 60.) And third, Shader has not demonstrated that the VE's testimony is inconsistent with the DOT.

For example, Shader asserts that working as a produce sorter is inconsistent with her RFC. The DOT occupational definition for produce sorter states that an individual must "[s]egregate[] produce on [a] conveyor belt or table." DOT Code 529.687-186, *available at* http://www.occupationalinfo.org/52/529687186.html. Shader notes that her RFC precludes her from performing fast-paced or assembly work; however, work on a conveyor belt or table is not exclusively fast-paced or assembly work. *See* SSR 00-4p, at *3 (noting that the DOT

12

does not incorporate the range of requirements within a particular occupation and that a VE may be able to provide more specific—and localized—occupational information).

Shader relies on strict DOT definitions, but the VE and the ALJ are not bound by these definitions. *Wright*, 321 F.3d at 616. Therefore, substantial evidence supports the finding that Shader could make an adjustment to other work, and the ALJ applied the correct legal standards in making this determination. *See Lindsley*, 560 F.3d at 604; *Wright*, 321 F.3d at 616.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for judgment on the pleadings (DE 14) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 15) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated February 5, 2015.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY